UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FRANK SCHIPANI and OLGA SCHIPANI,

                              **Plaintiffs,**

              **-against-**
                                                                  **MEMORANDUM**
                                                                   **& ORDER**
**WILLIAM S. McLEOD, D.P. GALLIMORE**                     **00-CV-4343 (SMG)**
**& SONS, and BRIAN J. RUZALSKI,**

                              **Defendants.**
-------------------------------------------------------------X
GOLD, S., U.S.M.J.:

## INTRODUCTION

      The facts of this case are recited in prior court orders, familiarity with which is assumed. In brief, plaintiffs Frank and Olga Schipani bring this action seeking to recover damages for injuries they suffered as a result of a motor vehicle accident in New Jersey. The Schipanis were passengers in a vehicle being driven by defendant Brian Ruzalski (the "Ruzalski vehicle"). Ruzalski's vehicle was struck from behind by a tractor trailer owned by defendant D.P. Gallimore & Sons and being driven by defendant William McLeod (the "Gallimore vehicle"). The Gallimore vehicle, in turn, had been struck in the rear by a second tractor trailer owned by R. Byrd Trucking Co. and being driven by Rudolph Byrd. See Memorandum and Order dated October 15, 2001, at 2, Docket Entry 27.

      Plaintiffs settled with defendants R. Byrd Trucking Co. and Rudolph Byrd (the "Byrd defendants") early in the litigation for $35,000. Plaintiffs have not pursued their claims against defendants Ruzalski and McLeod, and those claims are hereby dismissed with prejudice.[1] This

---

[1] By Letter dated April 27, 2006, defendant Ruzalski argues that "there should be no liability against [himself]." Indeed, plaintiffs previously indicated that they "have no intention of making out a case against [Ruzalski]." Pl. Letter dated Jan. 31, 2005.
      McLeod never answered the complaint. D.P. Gallimore & Sons moved to amend to assert an answer on behalf of McLeod, but United States Magistrate Judge Cheryl Pollak denied Gallimore's motion. Docket Entry 27. Plaintiffs have not sought a default judgment against

leaves D.P. Gallimore & Sons ("Gallimore") as the only remaining defendant.

By Memorandum and Order dated March 31, 2004, Senior United States District Judge Sterling Johnson, Jr., who was at that time presiding over this case, granted plaintiffs' motion for summary judgment on liability against defendant Gallimore. Docket Entry 90. In the course of his ruling, Judge Johnson held that, "[a]s the accident occurred in New Jersey, the New York no-fault law and its 'serious injury' threshold for personal injury claims do not apply in this case." Id. at 7.

The case has since been assigned to me for all purposes, and the parties have stipulated to have all issues, including the assessment of damages, decided by the court on papers they have previously submitted.[2] Because Gallimore has already been found liable, the only question remaining is the amount of damages to be awarded. There are, however, two issues that must be resolved before calculating damages: (1) whether plaintiffs are required to meet New Jersey's No-Fault Law threshold to recover damages and (2) the effect of plaintiffs' settlement with the Byrd defendants upon the assessment of damages against Gallimore.

**DISCUSSION**

1.  *Application of New Jersey's No-Fault Law*

Like New York, New Jersey has a statute which permits individuals injured in automobile accidents to recover for non-economic loss only if their injuries are of a specified type or degree.

---

McLeod. Moreover, Judge Pollak recommended that the claims against McLeod be dismissed in April, 2002. Docket Entry 40. No objections to her recommendation were filed.

[2] See Docket Entry 106. Plaintiffs and Gallimore previously made submissions in support of their claims for damages. These submissions include the Affidavit of Lester B. Herzog dated May 7, 2004 ("Herzog Aff."), the Affidavit of Matthew M. Cordrey dated May 24, 2004 ("Cordrey Aff."), Plaintiffs' Reply Affidavit of Lester B. Herzog dated May 28, 2004 ("Herzog Reply Aff."), the Sur-Reply Affidavit of Matthew M. Cordrey dated June 8, 2004 ("Cordrey Sur-Reply Aff."), and a certified copy of plaintiffs' medical records from Dr. Boris Tsatskis.

See N.J. STAT. ANN. § 39:6A-8 (West 2006); Whitaker v. DeVilla, 687 A.2d 738, 740 (1997). New Jersey law refers to this limitation on recovery as a "Verbal Threshold." Id.

I conclude that plaintiffs are not subject to the limits on recovery imposed by the "Verbal Threshold" for two independent reasons: 1) New Jersey's so-called "Deemer Statute," which applies the Verbal Threshold under certain circumstances to individuals injured while passengers in automobiles registered in other states, is not applicable here; and 2) the Verbal Threshold statute applies only to automobile accidents, and plaintiffs were injured in a collision with a commercial tractor-trailer.

First, New Jersey's Verbal Threshold does not apply to individuals injured in New Jersey unless they are named insureds on the relevant insurance policies. As noted earlier, an individual injured in an accident in a New Jersey-insured automobile is subject to a significant injury threshold before recovering for non-economic loss. N.J. STAT. ANN. § 39:6A-8(a) (West 2006).[3] An individual injured in an automobile insured in another state is generally also subject to the threshold of the New Jersey No-Fault Law. This result occurs pursuant to a New Jersey law referred to as the "Deemer Statute" N.J. STAT. ANN. § 17:28-1.4 (West 2006). See also Whitaker, 687 A.2d at 747 (noting that the statute "impos[es] the verbal threshold on non-resident insureds injured in this state and insured by companies authorized to do business here"); Taylor v. Rorke, 652 A.2d 207, 208 (N.J. Super. Ct. App. Div. 1995). Pursuant to the Deemer Statute, if a driver is insured in another state, by an insurer authorized to issue motor vehicle insurance in New Jersey, and that driver is involved in an accident in New Jersey, New Jersey law "deems" the out-of-state driver's insurance policy to provide the coverage required by New Jersey law. The Deemer Statute further provides that "any named insured, and any immediate

---

[3] New Jersey residents, however, may opt to pay higher premiums with no limit on the right to recover for non-economic loss. N.J. STAT. ANN. § 39:6A-8(b).

3

family member" of the named insured on the policy, is subject to the Verbal Threshold.[4]  N.J. STAT. ANN. § 17:28-1.4.  See also Taylor, 652 A.2d at 208 ("deeming" a North Carolina insured driver subject to New Jersey's Verbal Threshold); Whitaker (holding that a driver insured in Pennsylvania and his wife were subject to New Jersey's Verbal Threshold, even though plaintiffs paid a higher premium to obtain a full tort option in their home state).

The Deemer Statute does not control here, however, because it is limited by its terms to named insureds and their immediate family members.  See Whitaker, 687 A.2d at 746.  Plaintiffs, who were passengers in the Ruzalski vehicle, apparently were not covered under their own automobile insurance policy and were not named insureds on Ruzalski's policy or members of Ruzalski's immediate family.[5]  Cf. Rojas v. DePaolo, 813 A.2d 1288 (N.J. Super. Ct. 2002) (deciding that an out-of-state uninsured driver is not required to meet the New Jersey threshold). Defendant's argument that the Deemer Statute applies because plaintiffs received benefits under Ruzalski's insurance policy is incorrect.  Def. Mem. pp. 7-8; Def. Reply p. 2.  The Deemer Statute applies only to persons who are "named insureds" or family members of named insureds on a policy.  Plaintiffs are not *named* insureds on the Ruzalski policy, even though they were eligible for and received benefits under Ruzalski's policy.  See N.J. STAT. ANN. § 39:6A-2 (defining named insureds as individuals specifically identified in a policy and even excluding spouses in certain circumstances).  Thus, I conclude that the Deemer Statute is not a proper basis

---

[4] The Deemer Statute applies to all motor vehicles, not just automobiles.  N.J. STAT. ANN. § 17:28-1.4.

[5] Because the parties have not presented any evidence or argument to the contrary, I presume plaintiffs are not covered under their own automobile insurance policy.  See Order dated May 4, 2006, Docket Entry 107 (advising the parties that "the Court is proceeding under the assumption that the plaintiffs do not have New York automobile insurance and that they are not required to maintain automobile insurance under New York law," and providing that, "[i]f any party believes this assumption is incorrect, counsel shall produce evidence and submit brief arguments as to its impact") .

for applying the Verbal Threshold to plaintiffs in this case.

Second, as plaintiffs correctly point out, the Verbal Threshold applies only to accidents involving automobiles, and defendant's vehicle was a commercial tractor-trailer. *See* Pl. Mem. p. 3. The statute provides that "[e]very owner, registrant, operator or occupant *of an automobile* . . . is hereby exempted from tort liability for non-economic loss" that does not meet the threshold. N.J. STAT. ANN. § 39:6A-8(a) (West 2006) (emphasis added). New Jerseys defines an automobile as "a private passenger automobile of a private passenger or station wagon type. . . ." or van, pick-up truck or panel truck not used for commercial purposes other than farming. N.J. STAT. ANN. § 39:6A-2 (West 2006). The New Jersey Appellate Division has stated that "[m]otorcycles, *commercial trucks*, taxicabs, chauffeured rentals, and buses are excluded from the No-Fault Law." Wagner v. Transamerica Insur. Co., 400 A.2d 497, 500 (N.J. Super. Ct. App. Div. 1979) (emphasis added) (referencing N.J. STAT. ANN. § 39:6A-2). See also Lymon v. Cape Transit Corp., 775 A.2d 41, 42 (N.J. Super. Ct. App. Div. 2001) (holding that a commercial bus does not fall within the definition of an automobile as defined by New Jersey law and that an automobile driver struck in the rear by a bus was not required to meet the Verbal Threshold to recover damages for non-economic loss) (citing N.J. STAT. ANN. § 39:6A-2); Simon v. Motor Vehicle Accident Indemnification Corp., 83 A.D.2d 803 (N.Y. App. Div., 1st Dept. 1981) (noting that a commercial truck is excluded from New Jersey's No-Fault law). In sum, the Verbal Threshold should not apply in this case because the statute applies only to accidents involving automobiles and defendant's vehicle was a commercial tractor-trailer, which is not an automobile under New Jersey law.

For these reasons, I find that plaintiffs are not required to meet the New Jersey Verbal Threshold in this case.

*2.     Effect of Settlement*

In their briefs, both parties discuss how, under New York law, plaintiffs' settlement with the Byrd defendants affects their rights to recover damages from defendant Gallimore. Def. Mem. pp. 3-5; Pl. Mem. pp. 11-14. Thus, the parties have implicitly agreed to the application of New York law, and no conflict of laws analysis need be undertaken.[6] Hannex Corp. v. GMI, Inc., 140 F.3d 194, 203 n.7 (2d Cir. 1998) (applying law of forum where parties did not discuss choice-of-law issue but argued law of forum in their briefs).

In New York, a settlement agreement reduces a plaintiff's claim against a non-settling tortfeasor either to the extent of the amount of the settlement or the amount of the released tortfeasor's equitable share of damages, whichever is greatest. N.Y. GEN. OBLIG. LAW § 15-108(a) (McKinney's 2006). If Section 15-108 is applied to this case, plaintiffs' award should be reduced either by $35,000, the amount of the settlement between plaintiffs and the Byrd defendants, or by the Byrd defendants' share of liability, whichever is greatest.

Plaintiffs contend that Section 15-108 should not apply in this case for two reasons. First, they argue that Judge Johnson's decision granting summary judgment apportioned 100% of the liability against defendant Gallimore. Pl. Mem. pp. 10-11. Second, they contend that Gallimore may not amend its answer to plead a defense based upon plaintiffs' settlement with the Byrd defendants at this stage of the litigation because plaintiffs would be prejudiced by such a late amendment. Id. at 11-14.

Judge Johnson's decision granting summary judgment is a finding of liability and not an

---

[6] In a prior submission, defendant argued that New Jersey law should govern the effect of plaintiffs' settlement. Def. Mem., Ex. B, pp. 10-12. New Jersey, however, has no interest in applying its loss-allocation rules to non-residents. See Gilbert v. Seton Hall Univ., 332 F.3d 105, 109-10 (2d Cir. 2003) ("[T]he New York Court of Appeals has made it reasonably clear that the state in which the injury occurs has little interest in seeing its own loss allocation rules applied.") (citing Schultz v. Boy Scouts of America, 491 N.Y.S.2d 90 (1985)).

6

apportionment of that liability. In other words, Judge Johnson's Order granting summary judgment constitutes a finding that plaintiffs established by a preponderance of credible evidence that Gallimore was negligent and is liable to plaintiffs. The question presented here, however, is the *percentage* of Gallimore's liability, not whether Gallimore is liable at all. Thus, the decision granting summary judgment does not bar Gallimore from presenting evidence apportioning liability between it and Byrd. Cf. Aragon v. A & L Refrigeration Corp., 618 N.Y.S.2d 345 (N.Y. App. Div., 1st Dept. 1994) (noting that a jury may apportion liability against a defaulting defendant if the jurors believe him to be at fault).

Second, plaintiffs will not be prejudiced by Gallimore's attempt to apportion liability during the damages phase of this litigation. A defendant may amend an answer to assert a defense pursuant to Section 15-108 at any time, even after trial, provided there is no prejudice. Whalen v. Kawasaki Motors Corp., 92 N.Y.2d 288 (1998).

Plaintiffs cite Judge Pollak's Memorandum and Order dated October 15, 2001 ("M&O") denying defendant's motion to amend its answer and argue that "Judge Pollak explicitly dealt with the [Section] 15-108 issue. . . and there has already been a finding that []amendment [to assert Section 15-108] would be prejudicial." Pl. Mem. at 12-13 (emphasis in original) (citing M&O p. 10, Docket Entry 27) ("By settling with the Byrd defendants, the plaintiffs changed their position in reliance on Gallimore's position as reflected in the original Answer. As a result, the plaintiffs would suffer prejudice if the defendant's motion to amend the Answer were granted.").

Plaintiffs, however, mischaracterize Judge Pollak's M&O in two ways. First, the motion brought by Gallimore sought leave to amend its answer "to appear and file an answer on behalf of defendant William McLeod, and to withdraw the cross-claim filed by Gallimore against McLeod," and not to assert a defense under Section 15-108. M&O p. 1. Second, Judge Pollak's conclusion that plaintiffs would be prejudiced if Gallimore were permitted to amend was based

7

on her conclusion that plaintiffs relied on Gallimore's admission that its driver was negligent when settling with Byrd. Judge Pollak's finding of prejudice, however, was not premised on any assumption about Gallimore's percentage of liability vis-a-vis Byrd's share of liability, which is the issue now before the Court. To the contrary, in a portion of her M&O that plaintiffs chose not to cite, Judge Pollak explicitly discussed the application of Section 15-108 in light of the Byrd settlement, and indicated that Gallimore would have the opportunity to demand an apportionment of damages:

> After a settlement under [Section 15-108], plaintiffs' claims against the non-settling defendants survive, but the non-settling defendants may defend the case by arguing that blame should be placed wholly or partially on the settling defendants. The non-settling defendants may demand that the jury apportion recovery between them and the settling defendants.

M&O p. 9. Indeed, in describing plaintiffs' argument in opposition to Gallimore's motion for leave to amend, Judge Pollak noted plaintiffs' agreement that Section 15-108 could limit their recovery even in the absence of an amended pleading:

> According to the plaintiffs' counsel's Affidavit in Opposition to the Motion, although Mr. Byrd caused the initial accident, with Gallimore's admission of negligence on the part if its own driver, Mcleod, and the interposition of a cross-claim against him, *plaintiffs would have been able to get a sufficient percentage of liability against Mcleod, even in view of the provisions of the General Obligations Law. N.Y. G.O.L. § 15-108.*

M&O p. 9 (emphasis added). Thus, plaintiffs' contention that Judge Pollak found that plaintiffs would be prejudiced if Gallimore was permitted a set-off pursuant to Section 15-108 is simply incorrect.

Moreover, I find that plaintiffs will not be prejudiced if liability is apportioned under Section 15-108. Plaintiffs settled with the Byrd defendants only one month after Gallimore's answer was served. M&O p. 4. At this early stage of the litigation, an effort to amend the pleadings should not have been surprising. As far as this court is aware, moreover, plaintiffs

8

made no effort to determine whether Gallimore would stipulate to a percentage of liability before finalizing their settlement with the Byrd defendants, nor did it serve Gallimore with a notice to admit or obtain interrogatory responses establishing a percentage of liability. In addition, plaintiffs were clearly alerted to Judge Pollak's view that Section 15-108 applied when her decision was issued, but made no effort to seek reconsideration.

Finally, the goals of the statute would be furthered by allowing Gallimore to assert a defense, even at this stage of the case. The purpose of Section 15-108 is to prevent a plaintiff from obtaining a double recovery and to ensure that a defendant bears only its fair share of liability. Whalen, 92 N.Y. 2d at 292; Williams v. Niske, 81 N.Y.2d 437, 442-43 (1993). By its plain language, Section 15-108 contemplates that non-settling defendants will have an opportunity to present evidence apportioning liability among all defendants. N.Y. GEN. OBLIG. LAW § 15-108. See also Williams at 440 n.1 ("Even though a defendant in a multidefendant suit settles, proof as to the settler's fault may still be presented at trial and the settler's equitable share determined.") (discussing N.Y. GEN. OBLIG. LAW § 15-108). Although plaintiffs might achieve a better monetary result if Section 15-108 were held not to apply, the policies of avoiding double recoveries and limiting a defendant's liability to its equitable share would be undermined. I therefore hold that Section 15-108 properly applies to this action, and that plaintiffs' award should be reduced either by $35,000 or by the Byrd defendants' percentage of liability, whichever is greater.

3.  *Apportionment of Liability*

The next step in determining an award is apportioning liability between Byrd and Gallimore for the accident that caused plaintiffs' injuries. The only evidence before the court with respect to how the accident occurred is the deposition testimony of the plaintiffs and the police report of the accident. To some extent, as explained below, the evidence is in conflict.

9

The Ruzalski vehicle was traveling southbound in the left lane of the New Jersey Turnpike on December 30, 1998. According to plaintiffs, shortly before the accident, they and Ruzalski all observed that the Gallimore tractor-trailer was following very closely behind their car. Frank Schipani Deposition Transcript ("F.S. Dep. Tr.") 26-27, Cordrey Aff., Ex. D; Olga Schipani Deposition Trancript ("O.S. Dep. Tr.") 16, Cordrey Aff., Ex. E. Due to traffic congestion ahead, the Ruzalski vehicle was slowing down, traveling approximately 10 to 15 miles per hour when the accident occurred. F.S. Dep. Tr. 23-26; O.S. Dep. Tr. 15-19. In their depositions, plaintiffs both testified that there were then two successive impacts. F.S. Dep. Tr. 31-33; O.S. Dep. Tr. 19.

Gallimore has failed to offer any evidence rebutting plaintiffs' testimony that Gallimore was at fault for following too close and not being able to stop in time. See Bigelow v. Acands, Inc., 601 N.Y.S.2d 478, 480 (N.Y. App. Div., 1st Dept. 1993) (defendant bears the burden of establishing settling tortfeasor's equitable share when seeking to reduce its own damages). Rather, Gallimore argues that Byrd should be held solely responsible for causing the accident because the Gallimore vehicle had already safely come to a stop before being struck by the Byrd tractor-trailer. Def. Mem. p. 11. Gallimore's argument is supported by the police report of the accident, which states that the Ruzalski and Gallimore vehicles were already stopped when the Byrd vehicle hit the Gallimore tractor-trailer, forcing it into the Ruzalski vehicle. Cordrey Aff., Ex. J. The officer concluded that the cause of the accident was "[d]river inattention" in that Byrd "failed to observe stopped traffic ahead and failed to stop in time." Id.

It is difficult to reconcile the apparent conflict between plaintiffs' deposition testimony and the information in the police report, particularly because the parties have asked that the case be decided on written submissions. Plaintiffs' deposition testimony suggests that the Gallimore vehicle first hit the Ruzalski car, and that the Byrd vehicle then hit the Gallimore truck, in turn

pushing it into the Ruzalski car a second time. The police report, however, states that the Gallimore vehicle was already stopped when the accident occurred. I afford greater weight to the police report because it was authored by a neutral observer with no interest in the outcome of this case, and was prepared immediately after the accident. The Schipanis' depositions, in contrast, were taken in 2002, after they settled with the Byrd defendants, and they therefore had an interest in attributing responsibility for the accident to Gallimore. Having considered all of the evidence, I conclude that the Gallimore vehicle played a role – albeit a small one – in causing the accident, by following the Ruzalski vehicle too closely and either stopping or slowing suddenly. This is consistent with the reasoning employed by Judge Johnson when he granted plaintiffs' motion for summary judgment with respect to Gallimore's negligence. Memorandum and Order dated March 31, 2004, Docket Entry 9, at 5-6. I therefore find the Byrd defendants to be 90% responsible and Gallimore 10% responsible for causing the accident.

4.  *Assessment of Damages*

Finally, the court must determine an appropriate damages award. Plaintiffs each seek $150,000 for past and future pain and suffering for their soft-tissue injuries to their necks, backs, and knees. Herzog Aff. ¶ 17.

Frank Schipani alleges that he suffered the following injuries: multiple disc herniations, multiple bulging discs, vertebral compression fracture, meniscal tear of his right knee, radiculopathy, post-concussion syndrome, right shoulder contusion, and post-traumatic straightening of the spine. Herzog Aff. ¶ 12. Recommended treatment included medication and physical therapy, but not surgery. Id. An MRI report describes herniated discs compressing the thecal sac at C4-C5 and C5-C6, but also characterizes the compression fracture and the loss of normal disc signal intensity and height as slight. Herzog Aff., Ex. D. Olga Schipani alleges that she suffered the following injuries: multiple bulging discs, post-traumatic straightening of the

spine, radiculopathy, post-concussion syndrome, and contusions on her left knee, left hip & left shoulder. Herzog Aff. at ¶ 13. The treatment plan for Olga Schipani was apparently identical to the one for her husband. Id. According to plaintiffs' doctor, MRI tests conducted in 1999 confirmed at least some of plaintiffs' injuries. Herzog Aff. Exs. B, D, E. As a result of their injuries, both of the Schipanis contend that they continue to suffer from back and neck pain, and restricted range of motion, even four years post-accident. Medical Affidavit of Boris Tsatskis, M.D., Herzog Aff. Ex. B.

At the time of the accident, Frank Schipani was 40 years old; Olga Schipani, 41. When asked by the police at the accident scene if they desired an ambulance, both declined and neither sought medical treatment for at least a few days after the accident. F.S. Dep. Tr. 38, 48-49; O.S. Dep. Tr. 29, 33-34. Frank Schipani was employed as a freight supervisor and was out of work for two months after the accident. F.S. Dep. Tr. 14. Olga was a seasonal sales associate at a retail clothing store and did not lose any time away from work due to her injuries. O.S. Dep. Tr. 9-10. Frank Schipani received physical therapy for approximately six months after the accident, and Olga Schipani for a slightly shorter period of time. F.S. Dep. Tr. 59, 68; O.S. Dep. Tr. 45. At the time of his deposition in 2002, Frank Schipani was not taking medication for pain. F.S. Dep. Tr. 82-83. Olga Schipani never sought or received prescription medication for her pain. O.S. Dep. Tr. 60.

Gallimore argues that the Schipanis sustained no significant injuries as a result of the car accident. Upon examination by defendant's medical expert, Gallimore's doctor concluded that the Schipanis each had full range of motion and no clinical signs of pain. Affidavit of Maria Audrie DeJesus, M.D., Cordrey Aff. Ex. F. Moreover, although defendant's radiologist, Dr. Sondra Pfeffer, confirms that the Schipanis have some disc herniations and bulges, she concludes

that their injuries are either degenerative or pre-existing.[7] Cordrey Aff. Ex. G. With respect to Frank Schipani, however, Dr. Pfeffer acknowledges that the disc herniation at the C4-5 level may be related to trauma. Id.

I find that Frank and Olga Schipani did suffer soft tissue injuries to their backs and necks as a result of the 1998 car accident. Indeed, even defendant's radiology expert concedes that Frank Schipani suffered a traumatic disc herniation. Moreover, Frank Schipani stayed home from work for approximately 2 months due to the severity of his injuries. Having considered all of the evidence, I award Frank Schipani $115,000, and Olga Schipani $55,000, for their past and future pain and suffering.

Applying Section 15-108, plaintiffs' damages award against Gallimore should be reduced by the greater of the settlement amount, $35,000, or Byrd's equitable share of the damages. Ninety per cent (Byrd's share of liability) of $170,000 is $153,000, which is greater than the settlement amount of $35,000. Thus, Gallimore's liability should be reduced by $153,000, leaving an award of $17,000, comprised of $11,500 due to Frank Schipani and $5,500 due to Olga Schipani.

## CONCLUSION

For the reasons stated above, plaintiffs' claims against defendants McLeod and Ruzalski are hereby ordered dismissed with prejudice. Defendant Gallimore's contention that plaintiffs should be required to meet New Jersey's verbal threshold is rejected, and defendant Gallimore's application for a ruling that it is entitled to a set-off in the amount of the settlement or equitable

---

[7] I note that plaintiffs object to the expert report of defendant's radiologist on the grounds that she was not part of expert discovery and, in particular, because Judge Pollak denied Gallimore's motion for additional time to submit a radiology expert report. Herzog Reply Aff. ¶ 29; Minute Entry for Status Conference on Mar. 21, 2003, Docket Entry 73. I therefore place no weight on Dr. Pfeffer's report, other than to note that it supports plaintiffs' claims in some respects.

13

share of damages of the Byrd defendants is granted. Judgment is awarded for plaintiffs against defendant Gallimore in the amount of $17,000, comprised of $11,500 due to Frank Schipani and $5,500 due to Olga Schipani.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**December 1, 2006**

                                      /s/
                                **STEVEN M. GOLD**
                                **United States Magistrate Judge**